IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JEREMY PEARSON | ) | |
| | ) | |
| v. | ) | NO: 3:17-0485 |
| | ) | |
| CORECIVIC, et al. | ) | |

TO: Honorable Waverly D. Crenshaw, Jr., Chief District Judge

### R E P O R T   A N D   R E C O M E N D A T I O N

By Order entered March 24, 2017 (Docket Entry No. 8), this *pro se* prisoner civil rights action was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Presently pending before the Court is the motion for summary judgment (Docket Entry No. 109) of Defendants CoreCivic, Inc., Felag Amaniel, Fredrick Perry II, and Gregory Todd Thomas. For the reasons set out below, the undersigned Magistrate Judge respectfully recommends that the motion be granted and this action be dismissed.

### I. BACKGROUND

During 2016 and 2017, Jeremy Pearson ("Plaintiff") was confined as a convicted prisoner in the Metro Davidson County Detention Facility ("MDCDF") in Nashville, Tennessee.[1] On March 6, 2017, he filed this lawsuit *pro se* and *in forma pauperis*, asserting claims under 42 U.S.C.

---

[1] On October 10, 2017, Plaintiff filed a change of address notice providing a non-institutional residential address. *See* Docket Entry No. 98.

§ 1983 based on allegations that his constitutional rights were violated at the MDCDF. He seeks damages and injunctive relief.

Plaintiff alleges that, during the night of June 5, 2016, MDCDF guard Felag Amaniel ("Amaniel") came into his cell and sexually assaulted him. *See* Complaint (Docket Entry No. 1) at 5. Plaintiff alleges that he was sleeping and awoke to find Amaniel shoving the handle of a broom into Plaintiff's rectum. *Id*. Amaniel was a guard in the Unit Juliet where Plaintiff was housed at the time. Plaintiff verbally complained to another MDCDF officer the next day and initiated a formal complaint about the incident under the Prison Rape Elimination Act ("PREA"), recounting his allegations and further alleging that Amaniel had been harassing and sexually harassing him during the preceding several days. MDCDF employee Michael Davis thereafter conducted an internal investigation of the incident, which included taking written statements and conducting interviews. He ultimately determined that Plaintiff's allegations against Amaniel were unfounded. *See* Docket Entry No. 1 at 10; Declaration of Michael Davis (Docket Entry No. 114) at ¶ 3. The Metropolitan Nasvhille Police Department also conducted an investigation into Plaintiff's allegations and declined to prosecute Amaniel. *See* Declaration of Davis at ¶ 4.

In addition to his claim against Amaniel, Plaintiff alleges the assault occurred because a lack of staff at the MDCDF created an unsafe environment that led to the assault by Amaniel. *See* Complaint at 17 and 21. Plaintiff further contends that: (1) he was not transferred to another housing unit during the investigation and Amaniel was permitted to work around him; (2) prison officials have lied and tried to "cover up" the incident, did not provide evidence to the police investigation, and did not fully cooperate with the investigation; (3) an inexperienced nurse was

allowed to conduct the post-assault examination; and (4) he was placed in segregation for three days after the incident without a blanket. *Id*. at 16-21.

Upon initial review of the complaint under 28 U.S.C. §§ 1915 and 1915A, the Court found that Plaintiff stated a colorable constitutional claim against CoreCivic, Inc. ("CoreCivic"), a private entity that operates the MDCDF under contract with the Metropolitan Government of Nashville and Davidson County, Tennessee,[2] and MDCDF Warden Todd Thomas ("Thomas") based on the allegation that a shortage of staff at the MDCDF created an unsafe living environment at the MDCDF. *See* Memorandum (Docket Entry No. 7) at 2. All other claims and named defendants were dismissed. *Id*. at 3-4. Upon Plaintiff's filing of amendments to his complaint, his claim against Amaniel was permitted to go forward[3] and former MDCDF Chief of Security Fredrick Perry II ("Perry") was added as a defendant to the staff shortage/unsafe living environment claim. *See* Order entered June 7, 2017 (Docket Entry No. 40).

After answers were filed by Defendants CoreCivic, Thomas, and Perry, a scheduling order was entered that provided for a period of pretrial activity. *See* Docket Entry No. 84. Although process was initially returned unexecuted for Defendant Amaniel with the notation that he was no longer employed by CoreCivic, the Court assisted Plaintiff in executing service of process upon Amaniel, *see* Docket Entry Nos. 83, and Amaniel filed an answer to the complaint. *See* Docket Entry No. 107. The docket in the case reflects that Plaintiff has been an active *pro se* litigant, filing

---

[2] Plaintiff originally sued Corrections Corporation of America, Inc. ("CCA"), which is now known as CoreCivic. Accordingly, CoreCivic was substituted in place of CCA as the corporate defendant. *See* Docket Entry No. 40.

[3] Plaintiff's claim against Amaniel was initially dismissed because Plaintiff named him in only his official capacity, a shortcoming that was remedied by Plaintiff in his amendment.

numerous motions and engaging in discovery. *See* Docket Entry Nos. 18, 40, 81, 82, 83, 90, 97, and 108.

## II. MOTION FOR SUMMARY JUDGMENT

On December 19, 2017, Defendants filed their motion seeking summary judgment under Rule 56 of the Federal Rules of Civil Procedure. In support of their motion, Defendants rely upon: (1) the declarations of Defendants Amaniel (Docket Entry No. 112), Perry (Docket Entry No. 115), and Thomas (Docket Entry No. 117); (2) the declarations of CoreCivic employees Bobby Aylward (Docket Entry No. 113), Michael Davis (Docket Entry No. 114), and Sylvia McGlothen (Docket Entry No. 116); and, (3) a Statement of Undisputed Material Facts (Docket Entry No. 111).

Defendants challenge the merits of Plaintiff's claims, arguing that there is no factual support for Plaintiff's claims. Defendant Amaniel denies sexually assaulting Plaintiff and argues that other undisputed evidence buttresses his contention that no assault occurred and that Plaintiff's allegation against Amaniel was an attempt by Plaintiff to retaliate against Amaniel because Amaniel had removed Plaintiff from a job duty in the housing unit. Defendants CoreCivic, Thomas, and Perry likewise contend that there is no evidence supporting the claim that a staffing shortage existed at the MDCDF that created a constitutionally unsafe living condition. They further argue that there is no support for a theory of supervisory liability against Defendants Thomas and Perry or for a claim of liability against CoreCivic for having a policy in place that caused and/or permitted the alleged sexual assault by Amaniel. In addition to their challenge to the merits of Plaintiff's claims, Defendants argue that his claims should be dismissed under the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a), because Plaintiff failed to exhaust his available administrative

remedies for his claims prior to filing his lawsuit. Finally, Defendants contend that the language of 42 U.S.C. § 1997e(e) prevents Plaintiff from pursuing his claims because he has not shown that he suffered from a physical injury that was more than *de minimis*.

Although Local Rule 7.01(b) generally provides a party with a 21 day deadline to respond to a motion for summary judgment, in recognition of Plaintiff's *pro se* status, the Court notified Plaintiff of the motion and gave him an additional 34 days to respond, setting a response deadline of February 12, 2018. *See* Order entered December 22, 2017 (Docket Entry No. 118). Plaintiff failed to file a response by this deadline. Instead, 32 days after the extended response deadline expired, he filed a motion for an extension of time to file a response, asserting that he needs more time to respond because: (1) he has post-traumatic stress disorder due to the sexual assault and has been receiving mental health counseling subsequent to his release from incarceration; (2) he has another federal lawsuit currently pending in this Court;[4] and, (3) he requests a "global settlement conference" so that both cases can be handled at one time. *See* Docket Entry No. 121. In the approximately one month since filing his request for an extension, Plaintiff has not made any other filings with the Court. By a contemporaneously entered order, the undersigned has denied Plaintiff's motion for an extension of time to file his response.

### III. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the

---

[4] *See Pearson v. CoreCivic*, 3:17-0950, which involves Plaintiff's allegations pertaining to an outbreak of scabies that occurred at the MDCDF.

5

Case 3:17-cv-00485   Document 122   Filed 05/02/18   Page 5 of 14 PageID #: 654

Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir.), *cert. denied*, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, at 249-50. "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

## IV. ANALYSIS

A. The Applicable Constitutional Standards

The Eighth Amendment prohibits the wanton and unnecessary infliction of pain upon a prison inmate, *Whitley v. Albers*, 475 U.S. 312, 319-20, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), and the unjustified infliction of bodily harm upon a prisoner by a prison guard gives rise to a claim under

42 U.S.C. § 1983. *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992); *Franklin v. Aycock*, 795 F.2d 1253, 1258 (6th Cir. 1986).

The Eighth Amendment also places upon prison officials a duty to protect prisoners from violence at the hands of others. *See Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To establish a constitutional violation based on failure to protect, a prison inmate first must show that he was incarcerated under conditions posing a substantial risk of serious harm. *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). Next, the prisoner inmate "must show that prison officials acted with 'deliberate indifference' to [the inmate's] health or safety." *Id*. "Deliberate indifference" is a higher standard than negligence and requires that the official know of and disregard an excessive risk to inmate health or safety; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

For any claim brought under 42 U.S.C. § 1983, a defendant cannot be held individually liable absent a showing that the defendant was personally involved in some manner in the allegedly unconstitutional conduct. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005); *Hardin v. Straub*, 954 F.2d 1193, 1196 (6th Cir. 1992). Because the doctrine of *respondeat superior* is not a basis for liability under section 1983, a defendant's role as a supervisory official does not render him or her personally liable for the acts of others. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 375-77, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). There must be evidence showing that a defendant personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the alleged unconstitutional conduct. *See Greene*

7

*v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

With respect to liability under 42 U.S.C. § 1983 against a defendant such as CoreCivic, there must be evidence showing more than the mere fact that a CoreCivic employee violated Plaintiff's constitutional rights. *See Street v. Corrections Corp. of Am.*, 102 F.3d 810, 817-18 (1996). Instead, there must be a showing akin to that of showing municipal liability under the analysis set out in *Monell v. Department of Soc. Servs*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Street*, 102 F.3d at 818. In short, Plaintiff must show that a CoreCivic policy, custom, or operating procedure was the "moving force" behind the alleged violation of his constitutional rights. *See City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

B. Merits of Plaintiff's Claims

After review of the record before the Court, the Court finds that summary judgment should be granted to Defendants because there is insufficient evidence before the Court upon which a reasonable jury could find in favor of Plaintiff on his constitutional claims. Although the allegations in Plaintiff's complaint were sufficient to permit the case to survive initial frivolity review under 28 U.S.C. §§ 1915 and 1915A, Plaintiff is not entitled to a trial solely on the basis of his allegations. *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986).

When a motion for summary judgment is properly supported under Rule 56, such as Defendants' motion, the non-moving party may not merely rest on the allegations contained in the complaint, but must respond with affirmative evidence supporting his claims and establishing the existence of a genuine issue of material fact that requires that the action proceed to trial. *See Celotex*

8

*Corp.*, 477 U.S. at 323-24; *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002); *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989). As the Sixth Circuit has noted, when a defendant files a motion for summary judgment, the plaintiff is challenged to "put up or shut up" on critical issues. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). Plaintiff's *pro se* status does not relieve him of this obligation, which is a threshold requirement for all non-moving parties when summary judgment is sought by an opposing party. *Sixty Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987).

Plaintiff has not satisfied this threshold obligation. Even though the Court *sua sponte* extended his response time and he had nearly two months to respond to the motion for summary judgment, he failed to oppose the motion and did not offer any evidence supporting his claims. The Court notes that Plaintiff offered no evidence supporting his claims even though (1) the Court in its December 22, 2017 Order specifically advised Plaintiff of the type of evidence that he would be required to produce in order to oppose summary judgment, and, (2) the record reflects that he engaged in discovery with Defendants and was provided with hundreds of pages of documents. *See* Docket Entry Nos. 102 and 108. Although Plaintiff filed a motion for an extension of time to respond to the motion for summary judgment, his motion was itself untimely, having been filed nearly a month subsequent to the response deadline,[5] and he offered no persuasive reason for his inability to file a response to the motion for summary judgment. Finally, in the month that has

---

[5] Being a *pro se* litigant does not permit a party to simply ignore a Court's clearly communicated deadlines. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991); *Cunningham v. Enagic USA, Inc.*, 2016 WL 5415106 at *1 (M.D. Tenn. Sept. 28, 2016) (Sharpe, J.); *Mayers v. Ellis*, 2016 WL 891181 at *5 (M.D. Tenn. Mar. 8, 2016) (Trauger, J.); *Smith v. Woods*, 2015 WL 8055912 at *1 (M.D. Tenn. Dec. 4, 2015) (Haynes, J.).

passed since his motion for an extension was filed, Plaintiff has made no filings regarding the motion for summary judgment. Effectively, Plaintiff has had over four months to address the issue of Defendants' request for summary judgment yet has taken no steps to oppose their motion and support his claims.

Plaintiff's lack of a response permits the Court to rely upon the supported facts as set forth by Defendants as the undisputed facts in this case.[6] With respect to Plaintiff's excessive force claim, there is insufficient evidence in the record to support Plaintiff's allegation that Defendant Amaniel assaulted him and violated his Eighth Amendment right to be free from a malicious use of force. In the face of Defendant Amaniel's specific denial of the alleged assault, the declaration of Michael Davis showing that two investigations into the matter found Plaintiff's allegations to be unfounded, and the declaration of Sylvia McGlothen showing that there is no medical evidence supporting Plaintiff's allegations of a sexual assault, Plaintiff cannot merely rest upon his pleadings but must present affirmative evidence supporting his claims. *See Chao*, *supra*. He has not done this, and there is simply no evidence before the Court upon which a reasonable jury could find in favor of Plaintiff on his claim against Defendant Amaniel.

Similarly, there is no evidence before the Court supporting a claim of individual liability against either Defendant Thomas or Defendant Perry based on the alleged assault by Defendant Amaniel. Such a claim would require proof that they participated in, or otherwise authorized, approved, or knowingly acquiesced in, the alleged unconstitutional conduct of Amaniel. No such proof has been provided by Plaintiff.

---

[6] As per Local Rule 56.01(g), Plaintiff's failure to respond to Defendants' Statement of Undisputed Facts "shall indicate that the asserted facts are not disputed for purposes of summary judgment." Local Rule 56.01(g).

There is also no evidence before the Court supporting a claim of liability against Defendants Thomas, Perry, or CoreCivic based on a theory that staffing levels at the MDCDF were so inadequate that they led to the conduct of Defendant Amaniel and to an independent violation of Plaintiff's constitutional rights because of unsafe living conditions. Such a claim requires a significant level of proof that is lacking in this case. Initially, there is no evidence showing that a staffing shortage existed at the MDCDF on June 5, 2016, or at any other relevant time, let alone evidence showing that staffing shortages created a risk of safety to Plaintiff that rose to the level of a constitutional violation. Further, there is no evidence before the Court that any of these Defendants were aware of constitutionally inadequate staffing shortages, if they existed, yet acted with deliberate indifference to this shortage and the need for more staff at the MDCDF. In the end, Plaintiff fails to provide any evidence that supports his assertion that constitutional liability exists against these three Defendants based on the events at issue.

C. PLRA Exhaustion[7]

The Court finds additional support for dismissal of the claim against Defendants Thomas, Perry, and CoreCivic because of Plaintiff's failure to exhaust available administrative remedies for this claim prior to filing his lawsuit. 42 U.S.C. § 1997e(a) of the PLRA requires a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 to first exhaust all available administrative remedies before filing a lawsuit about the conditions. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The PLRA's exhaustion requirement is mandatory.

---

[7] Given the Court's finding that summary judgment is warranted in favor of Defendants based upon Plaintiff's failure to provide supporting evidence, the Court declines to address Defendants' alternative argument that Plaintiff fails to satisfy 42 U.S.C. § 1997e(e).

*Id*. Once the affirmative defense of failure to exhaust is raised and supported, the burden falls to the prisoner plaintiff to present significant probative evidence showing that he has complied with the PLRA's requirement of exhaustion. *See Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).

Defendants have set forth undisputed evidence showing that an administrative grievance system exists at the MDCDF that is available to inmates and allows inmates to internally grieve their complaints. *See* Declaration of Bobby Aylward (Docket Entry No. 113) at ¶ 3. Defendants have also set forth undisputed evidence showing that, although Plaintiff engaged in the grievance process about numerous issues while at the MDCDF, he failed to pursue a grievance about staffing shortages and a risk to his safety because of staffing shortages. *Id*. at ¶ 6. Plaintiff has not provided any evidence showing that he exhausted this claim through the MDCDF grievance process prior to filing his lawsuit. Accordingly, the claim is subject to dismissal because of Plaintiff's failure to comply with the PLRA's exhaustion requirement.

However, the Court is unpersuaded by the exhaustion defense as it pertains to the claim against Defendant Amaniel. It is undisputed, and acknowledged by Defendants, that Plaintiff immediately pursued a PREA complaint against Defendant Amaniel and that this PREA complaint led to an investigation and an internal resolution of the allegations made against Amaniel. One of the purposes behind the enactment of the PLRA's exhaustion requirement is to afford correctional officials time and an opportunity to address complaints internally before allowing prisoners to initiate federal cases based on those complaints. *See Porter*, 534 U.S. at 525. Plaintiff's pursuit of the administrative remedy available to him through the PREA process certainly accomplished this purpose. Furthermore, only those administrative remedies that are "available" to inmates are

12

Case 3:17-cv-00485   Document 122   Filed 05/02/18   Page 12 of 14 PageID #: 661

required to be exhausted. *Ross v. Blake*, __ U.S.__, 136 S.Ct. 1850, 1858-59, 195 L.Ed.2d 117 (2016). The Sexual Abuse Prevention and Response Policy in place at the MDCDF provides that "unless otherwise mandated by contract, alleged PREA incidents will not be processed through the facility's inmate/resident grievance process." *See* Policy 14-2.4(L)(1)(c); Docket Entry No. 117-1 at 17. Thus, it appears that Plaintiff's complaint about being sexually assaulted by Amaniel was not amenable to being processed through the regular inmate grievance process and would have, in fact, been converted by policy to a PREA complaint had Plaintiff attempted to raise the matter through the regular inmate grievance process.[8] As such, the regular inamte grievance process was not available to Plaintiff for his complaint against Amaniel.

**RECOMMENDATION**

Based on the forgoing, the undersigned Magistrate Judge respectfully RECOMMENDS that the motion for summary judgment (Docket Entry No. 109) of Defendants CoreCivic, Inc., Felag Amaniel, Fredrick Perry II, and Gregory Todd Thomas be GRANTED and that this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.03(b)(1). A failure to file written objections within the specified time can be deemed a waiver of the right to appeal the

---

[8] The Court notes that the provision of Policy 14-2 is not acknowledged in the declaration of Bobby Aylward, who declares that he is responsible for the grievance process at the MDCDF and that Plaintiff did not exhaust his administrative remedies. *See* Docket Entry No. 113.

District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of the objections. *See* Federal Rule 72(b)(2) and Local Rule 72.03(b)(2).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge